### FRANK GUILD v. THE STATE.

No. 4089. Decided June 7, 1916.

Rehearing denied June 23, 1916.

1.—Pure Feedstuff Law—Statement of Facts—Bills of Exception—Misdemeanor.

Where the statement of facts and bills of exception were filed after adjournment of the County Court, without any order authorizing this to be done, the same will be stricken out on motion of the State.

2.—Same—Information—Words and Phrases—Statutes Construed.

The statute of 1905, as amended by the Act of 1907, uses the terms, concentrated commercial feeding stuff and concentrated feedstuff interchangeably, and there is no difference between the two terms as far as the offense is concerned, and the information is sufficient when it uses the terms concentrated feeding stuff.

3.—Same—Reasonable Statute—Public Policy—Constitutional Law.

There is nothing in appellant's contention that the pure feedstuff law is unreasonable, against public policy, and void, for the reason that it makes the agent of the principal guilty of an offense instead of the principal; in misdemeanor cases, the person who actually commits the crime is punished therefor whether he be acting for himself or his principal, and especially as a corporation, as such can rarely be criminally punished except by penalty recovered by suit.

Appeal from the County Court of Hemphill. Tried below before the Hon. J. L. Jennings.

Appeal from a conviction of a violation of the pure feedstuff law; penalty, a fine of $100.

Omitting formal allegations, the information alleged that Frank Guild was then and there the agent of the Terrell Cotton Oil Company, an incorporated company engaged in said State in the manufacture and sale of a concentrated commercial feeding stuff, towit, cottonseed cake, and did then and there in said Hemphill County, Texas, as such agent sell to the Canadian Implement Company, an incorporated company, ten bags of said cottonseed cake, each bag containing said cake containing a label thereon stating that said feeding stuff contained a substantially larger percentage of protein than was actually then and there contained therein, towit: the said label contained the statement that said feeding stuff contained not less than 44 per cent protein, whereas in truth and in fact not more than 41 per cent protein was actually then and there in said cake, and some of said cake in said sacks contained only 40.88 per cent of protein, and no more protein was then and there actually in said feeding stuff in said bags; and said label thereon further stated that there was a smaller quantity of crude fiber than was then and there actually contained therein, towit, the said label stated that said feeding stuff in said bags contained not more than 9 per cent of crude fiber, whereas in truth and in fact said feeding stuff in said bags contained more than 12 per cent of said crude fiber, and some of said cake in said bags contained 12.34 per cent crude fiber, and each of said bags purported to contain 100 pounds of cottonseed cake, against the peace and dignity of the State.

*Hoover & Dial*, for appellant.

*C. C. McDonald*, Assistant Attorney General, for the State.—On question of filing statement of facts and bills of exception: Looper v. State, 62 Texas Crim. Rep., 96.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of violating our pure feedstuff law, and the lowest punishment assessed.

The record shows that what purports to be bills of exception and a statement of facts were filed in the lower court some time after the adjournment of the term at which the conviction occurred without any order authorizing this to be done. The statute and the uniform decisions of this court are clearly to the effect that under such circumstances in misdemeanor cases this court can consider none of them. Hence, the Assistant Attorney General's motion to strike them out must be, and is, sustained. Some of these cases are collated in 2 Vern. Crim. Stats., p. 827.

Appellant's contention in his motion in arrest of judgment that the information is insufficient because he named the cottonseed cake described therein as concentrated *commercial* feeding stuff when the statute makes it *concentrated feeding stuff*, omitting the word *commercial*,

is untenable. The original Act of 1905, p. 207, with certain sections of it amended by the Act of 1907, p. 243, uses the terms *concentrated commercial feeding stuffs* and *concentrated feedstuffs* rather interchangeably. At least under the terms of this statute, there is no difference between the two. The statute does not attempt to make any difference between them, so far as the offense is concerned, but, as stated, treats them as if they were the same.

Neither is there anything in appellant's contention that said law is unreasonable, against public policy and void for the reason that it makes the agent of the principal guilty of an offense instead of making the principal so only. It is the general principle of law, in this State, that the person who actually commits a crime shall be punished therefor, whether he be acting on his own initiative or is an agent for a principal, and especially is this true in misdemeanor cases, as this case is. It is with rare exceptions our law provides for the punishment of a corporation for the violation of a criminal statute. In some instances it does so by prescribing a penalty to be recovered by suit in contradistinction from a fine or imprisonment therefor. In this case appellant's principal was a corporation as he claimed. The statute prescribes as a punishment for its violation a fine or imprisonment in the county jail, or both. If a corporation was insolvent, there would be no way whatever of enforcing a conviction of it. It could not be imprisoned either as a part of the punishment or for failure to pay the money fine. Hence, in order to enforce the law, it is essential that the agent who commits the crime shall be punished therefor instead of his principal, a corporation.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 23, 1916.—Reporter.]